National Surety Corporation, Appellant, v. Rodger M. Silver, Respondent.

First Department, July 6, 1965.

*Samuel Komoroff* for appellant.

*Benjamin Weberman* for respondent.

Breitel, J. The issue is whether a fidelity insurer, having recovered a judgment against a bonded employee who embezzled the funds of his insured employer, may enforce the judgment under CPLR 5104 and 5105 (subd. 2) or only under article 52 of CPLR. The difference is between enforcement by order of

the court with the sanction of punishment for contempt for failure to obey the order and enforcement only against the assets or income of the judgment debtor by way of execution.

Special Term held that the judgment was one only for the payment of money and therefore could be enforced only by execution. In fact the judgment in form is one directing the judgment debtor to pay and it arises out of circumstances in which equity extends its remedies to direct performance from the person. Consequently, the order should be reversed and the motion granted to the extent of directing the judgment debtor to make installment payments on account of the judgment.

Defendant had been employed as an assistant credit manager in a department store. In that capacity he appropriated about $20,000 of his employer's moneys over a period of 34 months. Subsequently, defendant was prosecuted for the crimes involved and convicted. He also had made a number of confessions and in this action consented to judgment in favor of plaintiff fidelity insurer, which had paid the employer the losses, in the amount of $24,970.90, inclusive of interest and costs. Although defendant at one time during the criminal proceedings against him represented that he would make certain cash payments and place a mortgage on his home for the benefit of plaintiff, he failed to perform his promises. Instead, the home has been rendered judgment-proof by transfer of its title to his wife and the placing of other mortgages upon it. Defendant is employed and has a gross income of something in the neighborhood of between $447 and $600 per month, depending upon who is believed. He is married and has two children depending upon him for support. In form the judgment recites that he embezzled funds while acting in a fiduciary capacity and directs defendant to pay the amount to plaintiff. In that respect it is unlike a law judgment for money only on which, as will be seen later, the sole remedy for enforcement is execution. The form of judgment, however, is not controlling (*Walford* v. *Harris No. 2*, 78 Hun 346, 347 [VAN BRUNT, P. J.]).

While the form of the judgment is not controlling, the pleadings supporting the judgment as well as the uncontested assertions on the present motion establish that the judgment was rendered for the moneys of the employer abstracted by defendant while employed in a position of trust and duty. The relief sought in the action had been for an accounting and personal judgment.

In 1947 the Civil Practice Act was amended to broaden the remedies available against fiduciaries directly and without the

necessity of issuing an execution (Civ. Prac. Act, § 505, as amd. by L. 1947, ch. 900; see Thirteenth Annual Report of N. Y. Judicial Council, 1947, pp. 44–45). The broadened remedies have been carried into CPLR 5105 (subd. 2). Of the broadened remedies it has been said by a leading commentator that: " it seems clear that the provision should be applied to any fiduciary relationship, whether it be consensual or purely remedial in nature. Although remedial relationships — such as constructive trust — are frequently judicial constructs designed to secure an equitable accommodation between the parties, there is no reason to exclude them from the scope of CPLR 5105(2). Indeed, it is in the area of remedial relationships that the term ' fiduciary ' in CPLR 5105(2) can take on its broadest meaning." (5 Weinstein-Korn-Miller, N. Y. Civ. Prac., par. 5105.07.)

Long before this statutory innovation the Court of Appeals, based upon long-established elementary principles, held that the courts would extend broad equitable remedies as for a constructive trust against one who had misappropriated the property of another (*Fur & Wool Trad. Co.* v. *George I. Fox, Inc.*, 245 N. Y. 215). In the *Fur & Wool* case it was said (p. 218):

" Clearly a thief, having sold stolen goods may be treated as a trustee of the proceeds and also of any property into which they have been transformed, so long as either may be identified. Under such circumstances broader relief may be obtained in equity than at law. Where necessary, an accounting may be had. A lien may be declared. A surrender of the trust property may be decreed. [Citing cases.] The added reason that the defendant is insolvent is not essential. Such was not found to be the fact either in *Newton* v. *Porter* or in *Jaffe* v. *Weld.*  *  *  *

" The complaint will not be dismissed, however, if ultimately it is determined that such proceeds are not found in possession of the defendant. Because a trustee has mingled them with his general funds the right to a resort to equity is not ended. The same rule exists as to a trustee *ex maleficio*. If equity has properly obtained jurisdiction it may retain it so as to afford proper relief — personal judgment in such a case against the wrongdoer."

The court went on to quote from the case of *Lightfoot* v. *Davis* (198 N. Y. 261) in which bonds had been stolen and sold and the owner was held entitled, many years later, to an accounting and personal judgment against the administrator of the estate of the thief, a remedy reaching far, indeed, in the use of equity's power to direct obedience from the person.

Thus, in this case, defendant merely as one who had wrongfully taken the property of plaintiff's insured would, under

elementary principles, be a trustee *ex maleficio* and accountable as such in the same way as one who owed duties under an express consensual trust (Restatement, Restitution, § 160 and Comments; 4 Scott, Trusts [2d ed.], §§ 461–462.5; 4 Pomeroy, Equity Jurisprudence [5th ed.], §§ 1044–1045, 1051, 1053). Actually, however, defendant was not a stranger thief. He was a trusted employee with a responsible position who embezzled the funds of his employer, and it is immaterial whether he had legal title to such funds. In either event equity imposes a trust on the stolen funds or their proceeds until the interests of innocent third-party transferees intervene (*National City Bank of N. Y. v. Waggoner*, 230 App. Div. 88, esp. 92–93, affd. 255 N. Y. 527).

With respect to a constructive trust the remedy of a lien on specific property is available so long as the injured party's property can be traced (Restatement, Restitution, § 215; 4 Pomeroy, *op. cit. supra*, §§ 1058b–1058f). But even where there is no specifically traceable property, the court is not without remedy. It will enforce a personal claim against the wrongdoer (Restatement, Restitution, § 215; 4 Pomeroy, *op. cit. supra*, § 1058; *Fur & Wool Trad. Co. v. George I. Fox, Inc., supra; Lightfoot v. Davis, supra*).

Where the court properly resorts to a direction to the wrongdoer to pay, this is not the classic money judgment at law, for which only an execution may issue. For the turbulent history of legislation covering the alternative remedies of enforcement by contempt or execution, with eventual victory for the view that with respect to " equitable " judgments for the payment of money, both remedies should be alternatively applicable, see Third Preliminary Report of the Advisory Committee (N. Y. Legis. Doc., 1959, No. 17, pp. 715–717; cf. *id*. Notes to § 13.1, p. 97; *id*. Notes to title 60, pp. 223–226; *id*. Notes to § 60.5, pp. 231–232). The difference in the form of judgment between one for payment of a sum of money only and one including a direction for the payment of money may be gleaned from any form book (see, e.g., 6 Bender's Forms for the Civil Practice [Frumer-Warren-O'Connell ed., 1964] Form No. 5016:2 and Form No. 5011:8).

The mere fact that the court has the power to grant broad equitable remedies does not mean that it should not be leashed by wise discretion. A situation where the wrongdoer is in possession of the misappropriated assets is quite different from one where it is not established that he retains those assets or their identifiable product. No useful policy would be served in converting a personal judgment in the nature of an equitable

judgment into a commitment to a debtor's prison. Consequently, with respect to the circumstances in this case, as a matter of discretion, the most that plaintiff is entitled to by way of relief is a direction for the defendant to make installment payments reasonably proportionate to his assets and gross income and the burdens he must bear with respect to his dependents (cf. CPLR 5226, 5231). But, because of the nature of the wrong, plaintiff is entitled to the strong direct sanction that the court has the power to render. The need is demonstrated by the defendant's conduct in the past in breaking his promises and in disposing of his assets.

Accordingly, the order denying plaintiff's motion to punish defendant for contempt should be modified, on the law, on the facts, and in the exercise of discretion, with costs and disbursements to plaintiff-appellant, to the extent of directing defendant with appropriate sanctions to make installment payments of $50 per month on account of the judgment debt, subject to revision from time to time as the circumstances of defendant may change. Settle order.

EAGER, J. (dissenting). I would affirm. The judgment here amounts merely to a direction for a recovery of converted funds. As a money judgment in conversion, it is not enforcible by contempt proceedings.

The general power of the Supreme Court to punish as a contempt the disobedience to its judgments in actions, whether in law or in equity, is limited by statute. Even though a judgment expressly directs the payment by the defendant of a certain sum of money, the judgment creditor's remedy to enforce the judgment is to proceed by execution and not by contempt proceedings. This was the general rule under the Civil Practice Act and is still the rule. (Judiciary Law, § 753; Civ. Prac. Act, § 505; CPLR 5105; 7 Carmody-Wait, N. Y. Prac., §§ 33, 34, p. 553, and vol. 8, §§ 3–5, p. 360.)

There is a statutory exception authorizing the enforcement of a judgment by contempt proceedings where the judgment "requires a trustee or person acting in a fiduciary relationship to pay a sum of money for willful default or dereliction of his duty". (CPLR 5105, subd. 2.) But this is not such a judgment. It is immaterial that the defendant *may have been* " a trusted employee " who embezzled funds of his employer or that he could have been held as " a trustee *ex maleficio* and accountable as such " to his employer, as suggested in the majority opinion. There was no determination or finding that the defendant was such an employee or that he was accountable as a trustee *ex*

*maleficio.* It does not appear that the defendant was entrusted with a specific or a particular fund or sum of money by his employer, nor is there any direction that he should account for and pay over such a fund or sum. Furthermore, the defendant did not stand in any fiduciary relationship to the plaintiff, who, as the surety upon a fidelity bond, is seeking reimbursement merely for the sum which it has paid to its insured. There was no proof that the defendant ever held particular funds or property as trustee, constructive or otherwise, for the benefit of the plaintiff surety corporation.

The judgment, including recitals, amounts merely to a direction that the defendant shall pay to the plaintiff a sum of money which he has converted; and, as such, is nothing more or less than a money judgment rendered, as expressly stated, with the consent of the defendant. It does contain a recital that "it is alleged" that the defendant embezzled funds while acting in a fiduciary capacity, but there is no statement in the judgment or finding by the court that the defendant did willfully breach a fiduciary duty in converting funds received in a fiduciary capacity. Therefore, the enforcement of the provisions of the judgment may be had only by execution. (See CPLR 5105; Carmody-Wait, N. Y. Prac., *supra;* 5 Weinstein-Korn-Miller, N. Y. Civ. Prac., par. 5105.01; *Pieper* v. *Renke,* 4 N Y 2d 410; *Harris* v. *Elliot,* 163 N. Y. 269; *Serviss* v. *Torino,* 263 App. Div. 722; *Hennig* v. *Abrahams,* 246 App. Div. 621; *Wasserman* v. *Lupis,* 223 App. Div. 773.)

If this is a proper case for the direction that the defendant make installment payments on account of the judgment debt, there are adequate legal remedies. (See CPLR 5231.)

Finally, there is no justification for holding the defendant in contempt without affording him the opportunity of a hearing on the question of his ability to pay and the willfulness of his alleged failure to comply with the provisions of the judgment.

Botein, P. J., Stevens and Staley, JJ., concur with Breitel, J.; Eager, J., dissents in opinion.

Order entered on May 12, 1965 denying plaintiff's motion to punish defendant for contempt modified, on the law, on the facts, and in the exercise of discretion, with $30 costs and disbursements to plaintiff-appellant, to the extent of directing defendant with appropriate sanctions to make installment payments of $50 per month on account of the judgment debt, subject to revision from time to time as the circumstances of defendant may change. Settle order on notice.